please be seated. Good morning everyone and welcome to the Ninth Circuit. I see my colleagues Judges Miller and Judge Pragerson on screen. Gentlemen, you can hear me okay? Yes. Yes, great. Well, Judge Miller and I want to thank Judge Pragerson. Obviously, the Pragerson family has meant a lot to this circuit and I can say personally having appeared before Judge Pragerson as an AUSA. I always found him fair and prepared. Hopefully, you guys will find him the same way today. We want to thank you Judge Pragerson for taking the time out of your very busy schedule in the Central District. I just want to say in my view the Central District is the busiest district in our circuit by far. No offense to other districts, but to me it's not close and so for Judge Pragerson to take the time to do this really means a lot to me and to our court. So, thank you Judge Pragerson. My pleasure. All right. So, we have four matters for argument today. If I'm counting correctly, yes, and the one that has been submitted is Colca and I believe counsel for the Shortman case are ready to go. All right. Oh, that's right. Thank you. The courtroom deputy reminded me there's two cases that have been submitted today. I skipped one, Colca and Carrillo. So, I apologize to counsel in that case. Mr. Hormel, is that right? Yes, your honor. All right. You may proceed when you're ready. Good morning to the court and to counsel. This appeal really tests the manner in which the government chose to charge Ms. Shortman against the facts used as a factual basis to support a guilty plea to a conspiracy with intent to distribute, possession with intent to distribute 50 grams or more of methamphetamine and a substantive count of possession with intent to distribute 50 grams or more of actual methamphetamine. The factual basis, your honor, rely on three completed distributions of methamphetamine on October 26th, November 1st, and November 9th of 2017. The charges, the charge is possession with intent. And the case law of Ninth Circuit, and as relied on by the Third Circuit, is that distributions of methamphetamine, the completed distribution, is a distinct and separate offense. The Mancuso case makes that clear. The Roe case makes that clear. And also the Second Circuit says that if there is a completed distribution, that must be offense from the substantive crime of possession with intent to distribute. But in order to, I mean, this is not a legal point. This is a factual point. In order to distribute something, you must first have possessed it. So, I mean, maybe it could have been charged as a distribution, but why is there not a factual basis for concluding that she, in fact, possessed it before she distributed it, as she said, plea colloquially? A couple of reasons. Number one is it's really clear in 21 U.S.C. 1841a that possession with intent to distribute controlled substance is definitely distinct from the distribution itself. So when the government is charging or viewing what to charge, Ms. Shortman no longer possesses the drugs that she previously possessed. She dispossessed them. And so there's no longer, and if I'm, probably should be looking straight. Sorry about that. So she's no longer possession with intent to distribute. Otherwise, they could use maybe those three distributions as relevant conduct, but then they'd have to figure out what she actually possessed during the period which she intended to distribute, because she'd already dispossessed the drugs in which they claimed she possessed. But she did admit, and this is at page 36 of the excerpts, the court asks, please tell me what you did that makes you feel you're guilty. I was in possession of more than 50 grams of methamphetamine. And what did you intend to do with that? Distribute it. Like, what's missing there? Why doesn't that establish? What's missing is a clarity from Ms. Shortman that it's relying on something other than the completed dispositions or completed distributions of the methamphetamine charged and used as the factual basis. That's the problem, is the factual basis doesn't align with what she appears to be admitting to. There has to be a factual basis and she has to admit to those matters in which the government alleged she is charged. Otherwise, the government can, as they did in Roe, I mean, Roe found there was insufficient evidence to support the conviction for count two, because the government used the theory of aggregating each of the separate distributions into a total quantity. And the same is true here. And so it's not clear that Ms. Shortman really knew that she was, well, it's clear that she was relying on the factual basis submitted by the government and her in support of the guilty plea. And the factual basis simply doesn't support the fact that she possessed at one given time a quantity of drugs that had 50 grams or more of actual methamphetamine. That's the distinction. Well, excuse me, wasn't there one sale, though, that had in and of itself over 50 grams? There was one sale, but it's a completed distribution, though. That's the problem. It's a completed distribution, so it's no longer possessed with intent to distribute. So that's why there's a faulty factual basis. Yes, there was one. Are you saying if someone possesses and then hands the drugs over, the crime of possession is moot? The crime of possession is completed. It's dispossessed. So possession with intent to distribute, once the drugs pass hands and money is exchanged, that crime becomes a legal impossibility? I would say that's an accurate assessment, especially considering the Moncuso authority out of the Ninth Circuit, because once you dispossess the item in which the government's saying you possessed, it is no longer in your possession. And that's what the government is relying on to convict her of possession with intent to distribute. The quantity of drugs have been dispossessed. They're no longer possessed. But we don't think about other felon possession of a firearm because it's quite common for people to be convicted of that based on evidence that at some point in the past, he had a gun. And it might be that by the time he's arrested, he no longer has the gun. But that supports conviction. So why is this different? Because 21 U.S.C. 841A makes it a distinct offense to distribute or to possess with intent. And that's clear from Moncuso. And that's clear from Roe and also from the Lardy case from the Second Circuit relied on by Moncuso. So that is what I believe is the problem with the factual basis for Counts 1 and Count 2. Count 1, the conspiracy, also has the problem, I believe, in that the factual basis doesn't establish whether or not the relationship between Ms. Shortman and her supplier went beyond a buyer-seller relationship. And I do believe that that Galladay, I said it was Galladay in my letter, but it's Galladay out of the Seventh Circuit, I believe, clearly answers the question in this case. And I would ask the court to actually adopt the Galladay decision, especially at page 784. So that would be 41 Fedforth at 784. After it explained the backdrop, it says, it is clear that a defendant charged with conspiracy under 846 cannot be found to understand the nature of the charge if he does not evince some acknowledgement that the conviction requires proof of a joint criminal purpose beyond a mere buyer-seller relationship. But I do think that's important in terms of conspiracy convictions. Can I just, I just want to interrupt you, sorry, because you're running out of time. I think this is an important issue in terms of the factual basis for supporting an agreement as opposed to a buyer-seller relationship. And, you know, there was a very sparse colloquy on, you know, that she intended, and I'm paraphrasing that, to have an agreement. So what are you arguing exactly? I don't think we're disagreeing on the law. What are you arguing here was deficient? It's in the record, the record before the magistrate court and the district court in relation to the factual basis of the plea is insufficient to prove there was an agreement with Ms. Shortman, with her seller, to further distribute drugs such as was she getting her drugs on consignment? Was she getting her drugs fronted to her? Okay, so what you're saying, I'm sorry to interrupt you, just running out of time. What you're saying in essence is the recitation of an agreement is insufficient. There has to be a factual basis that underpins the reasons for the agreement. It can't just be a conclusion. Yeah, I believe, and there has to be some indication in the record that the defendant, who's the one pleading guilty, has an understanding what that means. I think that's really important. There's nothing in the record that shows between the colloquy, between the court, defense counsel, and the prosecutor that there was an understanding that there was some sort of financial or some kind of relationship between Ms. Shortman's source and herself as the buyer-retailer. Thank you. I'll reserve the 40 seconds. We're going to round up today and give you a minute. If it pleases the court, Colin Rubich from the District of Montana, representing the United States. The heart of this case, as far as the United States believes, is the question is answered by United States v. Nickel, wherein this court has established very clearly that a judge's discretion is limited when they are rejecting a plea agreement. They can only reject that plea agreement. Well, there was no plea agreement in this case. Excuse me, not a plea agreement, and a change of plea. My apologies. When a defendant is changing their plea, regardless if it's a plea agreement or just, as was in this case, changing their plea to the entirety of the indictment, the judge's discretion is limited in the sense that they can only reject it if the defendant has failed to state necessary elements. And in this case, based on the transcript that was provided, it's very clear that the defendant knowingly and then accepted, you know, agreed that that is exactly what she had done. I don't think that's, you know, I don't think that's, it may be accurate legally, but it doesn't capture the essence. Certainly the elements have to be present, but a mere recitation of the elements would just simply be, you know, a statutory recitation without any factual basis. And to read that decision the way you read it would mean essentially there doesn't need to be any specific facts underlying a plea beyond the conclusory elements, and that's not accurate. No, and I'm not, and my apologies, Your Honor, I'm not suggesting that. Certainly there does need to be a factual basis, and that factual basis was provided and discussed. It is the interplay of both what the defendant admits to and the factual basis that provides, that is provided that leads us to whether there is a sufficient factual basis. And in this case, both were present. You know, there is this, there is a very clear discussion of what the conduct was at issue. And the judge rightly said, well, what exactly is, are we talking about in terms of conspiracy? And both, both attorneys, both the prosecuting attorney and the defense attorney discussed that there were a series of text messages that had established very clearly that the, that there was a conspiracy, that they, that they had identified a buyer, that she was part of an established network of, of individuals who were distributing in concert with this source. Does the word network appear in the colloquy? I don't remember seeing that word. Not that specific word, Your Honor. I think, and I can, the defense attorney says something similar though, and I can, I can certainly quote that. Because I agree with you that had it said, the defendant was part of a large-scale network in Montana to distribute controlled substances. She was a middleman. She did this, she did that. I'm not sure we would have the level of concern that I think Judge Pegerson is expressing, and I'm expressing, but words matter. And especially in a change of plea. And I, I don't see the word network. I don't see large operation. I don't see the words that you know, I did a lot of these factual, I was in AUSA for 11 years, and I did, I did a lot of guilty pleas narcotics cases. This one's pretty thin. Now, I appreciate the standard review in this case, and that, that, you know, may be what saves you. I don't know. But if you could be specific and direct us to the words that establish that. Certainly, Your Honor. And I do want to draw attention, and I want to find it, because I think it's important. And obviously, I mean, in the context of this, you know, there, you know, there was a brief discussion, but the defense attorney specifically says, Your Honor, the discovery lays out that, in fact, there were, there was, there was an identification of the source in this case, and then the source providing methamphetamine to Ms. Shortman, who was then distributing that methamphetamine to others via controlled substances. So the word network is not used, but the defense attorney, and I think we have to keep in mind that, that plain error standard, the defense attorney was in a position to know the discovery better than certainly here. And he had reviewed it, and maybe he did not use the specific word network. But that's an, and that's an end run around the whole plain, plain error standard. You know, we can't have plain error because the defense attorney knew what the reality was and didn't need to state it. But the judge's responsibility is to make sure that people understand what they're pleading guilty to. That's just simply fundamental. And the site that you reference about cell phone records, all that's, all that it concludes with is a government statement that, quote, and I believe they identified her source, who they had information was a source. So all of these, this discussion about records and all of there was a source. And, you know, my concern is that the crime of conspiracy is, of course, just the agreement. And usually with an agreement, you have indicia of certain factors, economic relationship, interrelatedness, you know, coded words, you know, all the factors. They're not here. They're not here, are they? I believe they are, Your Honor. Again, in the context of this change of plea, there would, you know, the goal is never to lay out every piece of evidence. And I'm not suggesting that we should have an end run around because we, you know, just saying, well, the defense attorney knew. But again, this discussion was an intelligent discussion where both attorneys on both sides established or affirmatively stated that there was an agreement. And then when the defendant was asked, and as a follow-up, that, you know, was there agreement in that context of that discussion and in, you know, in her consultation with her attorney, she then adopts, yes, there was in fact an agreement. An agreement to do one of two things. I'm asking a question. Number one is I, you know, someone, she provides money in exchange for drugs. That's an agreement. Another kind of agreement is I'm part of this and, you know, we work together as a conspiracy. So aren't there two agreements that are possible with this plea, common plea? Not as I read it, Your Honor. I mean, I think she was very clear. And I think, again, the court was very specific about, in its language, about what was the nature of that conspiracy. And, you know, he doesn't even use the word conspiracy. He asked what the nature of the agreement was. And she said that it was to distribute methamphetamine. And, you know, she adopts that position. And then the court follows up, you know, how much? And she said it was more than 50 grams of methamphetamine. So, again, there was this, you know, they didn't use these legal terms like conspiracy. He very much went into what was the agreement and what was the object of that agreement. And she specifically says the object of that agreement was to distribute methamphetamine. The other point that I think is relevant on this particular issue, Your Honor, is whether or not this, even if the conspiracy count, if there were concerns with it, whether that affected her substantial rights, and I submit that it does not, unless we adopt the position that both the possession with intent to distribute and the possession with intent to distribute methamphetamine were void, she would have ended up in the exact same place that she did. She was sentenced to the statutory minimum allowed by law as 120 months. So, even, you know, if she had just pled to the possession with intent to distribute methamphetamine, she was sentenced to the absolute minimum that she could be sentenced to. So, she would have ended up in the exact same place. Technically, I think she gets a special assessment back. So, I mean, there is, it's not moot. Yes. The special assessment would have been changed. That is true. So, we would still have to send it back. I understand practically there's no significant difference, but I don't think we can simply say it doesn't matter because technically the sentence would change. Yes, Your Honor. Barring any other questions, Your Honor, I will, I'll submit to the court. I'm just looking at the screen here. Judge Miller, Judge Pegerson? No. Okay. All right. Thank you very much, counsel. Just two points, Your Honor. Mancuso answers the question as to whether or not it's a legal impossibility or whether or not the government should be charging a distinct count of distribution as possession with intent. It says at page 793, we agree with the reasoning of the Second Circuit. Separate acts of distribution of controlled substance are distinct offenses under 21-841 as opposed to a continuing crime like possession with intent to distribute and therefore must be that it has to be charged as separate counts of distribution. And so, count 2 should be vacated and remanded to the district court for further proceedings. And number 2, had I had this case and saw the flaws with the evidence that the government has on both counts, I would have advised Ms. Shortman not to enter any guilty pleas. And I think she would have followed that advice, would not have pled guilty. So, I think we meet the high bar of plain error. Thank you. Thank you, counsel. Thank you both for your argument and briefing in this case. This matter is submitted.
judges: OWENS, MILLER, Pregerson